# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————————

UNITEDNET, LTD. and LEVI RUSSELL,

     Plaintiffs,

vs.                                                                           No. 1:21-cv-01081-KWR-JFR

TATA COMMUNICATIONS AMERICA, INC.,
TATA COMMUNICATIONS INDIA, LTD.,
TATA SONS PRIVATE, LTD., STEVEN LUCERO,
and LATINGROUP, LLC,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant Tata Communications America, Inc.'s Motion to Dismiss (**Doc. 8**) and Brief in Support (**Doc. 9**), filed February 1, 2022. Having reviewed the parties' pleadings and the relevant law, the Court finds that the motion is well-taken in part, and therefore, is **GRANTED**. The claims against Defendant shall be dismissed without prejudice for *forum non conveniens*, subject to certain conditions.

## BACKGROUND

This case arises from an unsuccessful business deal. Plaintiff Unitednet, Ltd. is a foreign corporation doing business in the United Kingdom. *See* **Doc. 1, ¶ 1**. Plaintiff Levi Russell, a resident of the United Kingdom, was a director for Unitednet. *Id.* **¶¶ 2, 30**. In 2016, Plaintiff Unitednet entered into a Sale and Purchase Agreement (the "Agreement") with Tata Communications (UK) Ltd., Tata Communications (Netherlands) B.V., and Tata Communications (Bermuda) Ltd. (collectively, the "Tata Signatories"), non-parties to this suit, to purchase a

telecommunications system.[1]  The system is an undersea and land-based fiber optic network that spans 1,100 miles and runs from the United Kingdom to the Netherlands.  *Id.* ¶ **19**.  The acquisition was never completed, and Plaintiffs allege that the Agreement was terminated as a result of tortious conduct by Defendants, non-signatories to the Agreement.

 The idea of the acquisition began in 2013.  Plaintiffs allege that Defendant Steven Lucero, a resident of New Mexico, expressed interest in purchasing the network from the Tata Signatories. *Id.* ¶¶ **20–21**.  The chairman of Defendant Tata Sons Private, Ltd. ("Tata Sons"), a foreign corporation based in India, and Defendant Lucero reached an agreement in principle with the Tata Signatories to sell the network at a price below market value.  *Id.* ¶ **21**.  In January 2014, Defendant Latin Group, LLC ("LGL"), a Delaware corporation with its principal place of business in New Mexico, to which Defendant Lucero is allegedly the principal owner, entered into a preliminary agreement with the Tata Signatories to purchase the network.  *Id.*

Defendant Lucero, a key player in the deal, later decided to purchase the network through a different entity, and thus, Unitednet, at the direction of Lucero, was formed for the purpose of completing the transaction.  *Id.* ¶¶ **14, 29–30**.  Defendant Lucero allegedly induced Plaintiff Russell to work on the deal "with promised compensation in the form of a percentage share of Plaintiff Unitednet."  *Id.* ¶ **14**.

From 2013 to 2017, Plaintiff Russell alleges that he spent "hundreds of days and thousands of hours working with Tata [Signatories'] executives, legal counsel, sales personnel, and operations employees" to complete the purchase.  *Id.* ¶¶ **34–35**.  However, as the parties began to

---

[1] The Court notes, although it is unclear, that Plaintiffs appear to refer to these three parties, or possibly, the entire Tata global business, collectively as "Tata Communications."  *Compare, e.g.*, **Doc. 1, ¶¶ 13, 15, 17** *with* ¶ **16** (referring to Tata Comm. India, Tata Comm. America, and Tata Sons Priv. as "Tata Defendants").  To avoid confusion, where Plaintiffs generically referred to the parties as "Tata Communications," the Court reasonably inferred based on Plaintiffs' pleadings which specific Tata entity was referenced and so stated.

work towards the acquisition, Defendant Lucero allegedly "played a dual game in which he exerted near total control over the negotiations for the purchase" of the network, including controlling the negotiations on behalf of Plaintiff Unitednet, while simultaneously "working behind the scenes" with Defendants Tata Communications America, Inc. ("Tata America"), a corporation with its principal place of business in Virginia, Tata Communications India, Ltd. ("Tata India"), a foreign corporation based in India, and others, to control the position that the Tata Signatories would take in negotiations. *Id.* ¶ **22**.

All told, Plaintiffs allege that Defendants Lucero, Tata Sons, Tata America, and Tata India conspired to change the structure of the deal to demand an approach to purchasing the network that was "contrary to industry standards" to prevent Plaintiff Unitednet from acquiring the network. *Id.* ¶ **59**. Plaintiffs allege that these Defendants then "conspired to manufacture deadlines" for Unitednet's acquisition of funding. *Id.* ¶¶ **60, 68–69**.

Plaintiffs further allege these Defendants conspired to require that Unitednet provide a letter from a bank or investor showing that Unitednet had secured $10.75 million in funds for the deal. *Id.* ¶¶ **38, 62–63**. According to Plaintiffs, this funding letter requirement was merely a "ruse" devised by Defendants Lucero, Tata America, and Tata India to hinder Unitednet's completion of the transaction. *Id.* ¶¶ **40–42.** Plaintiffs maintain that Defendant Lucero was responsible for securing funding for Unitednet's purchase of the network, yet Lucero repeatedly failed to do so. *Id.* ¶¶ **64, 75**. Plaintiffs assert that despite attempting to meet all the demands placed on Unitednet, Defendant Lucero actively sought to prevent Plaintiff Unitednet from securing funding, and instead, intended to complete the purchase of the network with another company, namely, Defendant LGL. *Id.* ¶¶ **58, 68**.

Eventually, after months without the requisite funding letter, Defendant Tata America notified Plaintiffs of the termination of the Agreement with the Tata Signatories. *Id.* ¶ **79**. Plaintiffs allege that Defendant Lucero conspired with Defendants Tata Sons, Tata America, and Tata India to terminate the deal. *Id.* ¶ **80**. Plaintiffs nonetheless attempted to revive the Agreement through alternative means of funding and the Tata Signatories asked for time to consider this new proposal. *Id.* ¶ **83**. However, Plaintiffs allege that Defendant Lucero worked with Defendants Tata Sons, Tata America, and Tata India to interfere with the decision of the Tata Signatories. *Id.* ¶ **84**. The Tata Signatories rejected Plaintiffs' offer and the deal collapsed. *Id.* ¶ **83**.

As a result, Plaintiffs Unitednet and Russell filed suit asserting the following claims:

Count I:        Tortious Interference with Contract (against all Defendants)

Count II:       Civil Conspiracy (against all Defendants)

Count III:      Breach of Fiduciary Duty (against Defendant Lucero)

Count IV:       Aiding and Abetting Breach of Fiduciary Duty (against Defendants Tata America, Tata India, Tata Sons, and LGL)

Count V:        Quantum Meruit (against all Defendants)

Defendant Tata America filed the instant motion to dismiss for *forum non conveniens*, or in the alternative, for failure to state a claim upon which relief can be granted. Defendant argues that Plaintiffs' suit is centered on the Agreement, which has an exclusive forum selection clause that requires this case be brought in the Courts of England and Wales. Defendant also argues that Plaintiffs' allegations are conclusory and insufficient to maintain the claims against Defendant.

## LEGAL STANDARD

The appropriate way to enforce a forum selection clause pointing to a foreign forum is through the doctrine of *forum non conveniens*. *See Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013). *Forum non conveniens* "permits a court to dismiss a case when an adequate

alternative forum exists in a different judicial system and there is no mechanism by which the case may be transferred." *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019). "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009) ("*Yavuz II*") (quoting *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998)).

Ordinarily, there are two threshold questions in the *forum non conveniens* determination: first, "whether an adequate alternative forum exists," and second, "whether foreign law applies to the dispute." *See Yavuz II*, 576 F.3d at 1171. "[T]he court must confirm that foreign law is applicable, because *forum non conveniens* is improper if foreign law is not applicable and domestic law controls." *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (internal quotations and citations omitted). A defendant bears the burden of proving that an alternative forum exists, and that this forum "is both available and adequate." *See Gschwind*, 161 F.3d at 606.

If both questions are answered affirmatively, a court must then evaluate private-interest factors, such as the convenience of the parties, and various public-interest considerations. *See Atl. Marine*, 571 U.S. at 62–63. There is a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "A foreign plaintiff's choice of forum, however, warrants less deference. When the plaintiff is foreign, the private and public interest factors need not so heavily favor the alternate forum." *Gschwind*, 161 F.3d at 606.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl.*

*Marine*, 571 U.S. at 63 (internal quotations omitted).  Under *Atlantic Marine Construction Co. v. United States District Court*, the Court must perform a modified analysis of *forum non conveniens* when a valid forum selection clause is involved.  571 U.S. at 62.  A court must first determine whether the forum selection clause controls.  *Kelvion*, 918 F.3d at 1091.  A valid forum selection clause must be "given controlling weight in all but the most exceptional cases."  *See Atl. Marine*, 571 U.S. at 59–60.  Where there is a valid forum selection clause, the Court must then adjust its usual *forum non conveniens* analysis: first, "the plaintiff's choice of forum merits no weight," and second, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and "may consider arguments about public-interest factors only."  *See Atl. Marine*, 571 U.S. at 63–66; *Kelvion*, 918 F.3d at 1091, 1094.

## DISCUSSION

Because the presence of a valid and enforceable forum selection clause alters the type of *forum non conveniens* analysis, the Court must first determine whether the forum selection clause is mandatory, valid, and enforceable, and whether it is applicable to the claims at issue.  If the answer to these questions is in the affirmative, the Court must apply the modified *forum non conveniens* analysis, and Plaintiffs bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.  *See Atl. Marine*, 571 U.S. at 64.

In this case, the Agreement contains both a choice-of-law and forum selection provision. The Agreement provides that:

> **Governing law: Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of England and Wales without regard to conflict-of-laws principles that would require the application of any other laws. Each of the parties consents to the exclusive jurisdiction and venue of the Courts of England and Wales in any suit or proceeding arising out of or relating to this Agreement or the transactions contemplated by this Agreement.

*See* **Doc. 9-1, Ex. A, at 45 § 10.13**.[2]

The parties first dispute which law governs the interpretation and the enforceability of the forum selection clause in the Agreement.  The parties also dispute whether a non-signatory to the Agreement, such as Defendant Tata America, may enforce the forum selection clause.  Finally, the parties dispute whether tort claims are encompassed in the forum selection clause.

The Court finds that the law of the United Kingdom applies to determine the scope and interpretation of the Agreement, and the instant tort claims are within the scope of the forum selection clause.  The Court concludes that although the Agreement is valid and enforceable, under the laws of the United States and the United Kingdom, Defendant Tata America may not enforce the forum selection clause against Plaintiffs because enforcement by a non-signatory is contrary to the express language of the Agreement.  Nonetheless, Defendant has shown that dismissal of Plaintiffs' claims against it is warranted under the traditional *forum non conveniens* analysis.  Thus, having concluded that the claims against Tata America should be dismissed under *forum non conveniens*, the Court need not address the substantive merits of Plaintiffs' Complaint.

## I.    **The Governing Body of Law.**

Plaintiffs argue the law of the United Kingdom applies to the interpretation and enforceability of the forum selection clause because of the express choice-of-law clause in the Agreement.  *See* **Doc. 17, at 2–3**.  Defendant contends that the law of the United States applies to determine the enforceability of the forum selection clause.  *See* **Doc. 20, at 4**.

---

[2] In ruling on a motion to dismiss, the Court may consider documents and materials "referenced in the Complaint and central to Plaintiff's claim."  *See NCMIC Ins. Co. v. Brown*, No. 17 CV 1000 JAP/CG, 2018 WL 1508550, at *2 (D.N.M. Mar. 26, 2018); *see also Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  The Agreement was referenced by Plaintiffs and is central, in part, to Plaintiffs' allegations.  The Agreement was submitted by Defendant Tata America and no party disputes its authenticity.  Accordingly, the Court will consider the Agreement without converting the instant motion into a Rule 56 motion for summary judgment.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

Where a contract contains both a choice-of-law and a choice-of-forum clause, what body of law governs the forum selection clause?  The answer remains unsettled.  Courts appear to disagree about which law—federal law, the forum state's law, or the parties' contracted-for-law—governs the enforceability and interpretation of a forum selection clause in diversity cases.  *See New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 430 F. Supp. 3d 900, 929–34 (D.N.M. 2019) (noting the circuit split and the absence of conclusive authority from the Supreme Court); *Irsik & Doll Feed Servs., Inc. v. Roberts Enterprises Invs., Inc.*, No. 6:16-1018-EFM-GEB, 2016 WL 3405175, at \*3 (D. Kan. June 21, 2016) ("Because contracts designating a place of jurisdiction or venue may implicate both state substantive law and federal procedural law, courts have struggled with which law to apply."); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997) (declining to consider whether state law or federal common law controls the validity and interpretation of a forum selection clause in a case sitting in diversity); *see also* Symeon C. Symeonides, *What Law Governs Forum Selection Clauses*, 78 La. L. Rev. 1119 (2018) (reviewing cases).

Generally, courts evaluate forum selection clauses according to ordinary principles of contract interpretation.  *See Kelvion*, 918 F.3d at 1092.  A federal court with jurisdiction based on diversity generally applies the substantive law, including choice of law rules, of the State in which it sits.  *See Gerson v. Logan River Academy*, 20 F.4th 1263, 1270 (10th Cir. 2021); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity must apply the choice-of-law rules of the forum state).

The Tenth Circuit has concluded that "when an international commercial agreement has both choice-of-law and forum-selection provisions, the forum-selection provision must ordinarily be interpreted under the law chosen by the parties."  *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 421

(10th Cir. 2006) ("*Yavuz I*"); *Kelvion*, 918 F.3d at 1092 n.2.  "[R]espect for the parties' autonomy and the demands of predictability in international transactions require courts to give effect to the meaning of the forum-selection clause under the chosen law, at least absent special circumstances." *Yavuz I*, 465 F.3d at 418.  Thus, "when a court interprets a contract, as a general matter it applies the law that the parties selected in their contract."  *See id.* at 427 (There is "no particular reason, at least in the international context, why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties."); *Martinez v. Bloomberg LP*, 740 F.3d 211, 221–22 (2d Cir. 2014) ("We find no authority for federal courts to generate general rules of contract interpretation where the contracting parties have expressly selected another body of law to govern their agreement and rely on this law in litigation.").

Here, the Agreement is an international commercial contract between sophisticated parties. The Agreement's choice-of-law provision provides that the law of England and Wales controls. *See* **Doc. 9-1, Ex. A, at 45 § 10.13**.  New Mexico provides that it is appropriate to enforce a contractual choice of law provision unless the application of the chosen law is contrary to public policy.  *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464, 467, 188 P.3d 1215, 1218; *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016) (explaining that "the presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction").  The parties do not dispute that the choice-of-law clause is valid and enforceable, nor do the parties argue that the application of

English law will be contrary to New Mexico public policy. Accordingly, the Court will honor the parties' choice-of-law clause and interpret the Agreement under English law.[3]

However, some courts have recognized a distinction between the *enforceability* of a forum selection clause and the *interpretation* of the clause and the underlying contract, and what law governs each issue. *See, e.g.*, *Balderas*, 430 F. Supp. 3d at 919 ("There is a distinction…between what law governs the enforceability of a forum selection clause and what law governs the interpretation of a forum selection clause."); *Martinez*, 740 F.3d at 217 ("[W]e distinguish between the interpretation of a forum selection clause and the enforceability of the clause.").

Consequently, "[t]he overwhelming majority of circuit courts consider the enforceability of forum selection clauses under federal law in diversity cases, based on the conclusion that venue presents a question of procedure for purposes of the *Erie*[4] doctrine." *Accord Herr Indus., Inc. v. CTI Sys., SA*, 112 F. Supp. 3d 1174, 1178 (D. Kan. 2015); *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). These courts have reasoned that if "the enforceability of a forum selection clause were governed by the law specified in the choice-of-law clause, then contracting parties would have an absolute right to 'oust the jurisdiction' of the federal courts." *See Martinez*, 740 F.3d at 218 (quoting *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509–10 (2d Cir. 1998)). Thus, many courts have concluded that federal law must govern the ultimate enforceability of a forum selection clause, in spite of a choice-of law provision, to ensure that a federal court "may decline to enforce a clause if trial in the contractual forum would be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived

---

[3] Under Rule 44.1 of the Federal Rules of Civil Procedure, in determining issues of foreign law, the Court may consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Thus, the Court looked to the decisions from the courts of England and Wales, whether or not they were submitted by the parties.

[4] Under the doctrine of *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938), federal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues.

of his day in court," or "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *See Martinez*, 740 F.3d at 218 (internal quotations and alterations omitted).

The Tenth Circuit has not drawn a distinction between issues of enforceability and interpretation or whether the law selected by parties in an international commercial agreement should also govern issues of enforceability.

There is a distinction, in form and in practice. *See* 11 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 30:1 (4th ed. 2012) (explaining that the interpretation of an agreement or its terms requires "determining the meaning of the words employed"); *id.* § 30:1 (explaining that the enforcement of an agreement, as opposed to interpretation, involves a court "determining, as a matter of law, not the sense of the words or symbols [in the contract] but the legal meaning of the entire contract"); *Collins*, 874 F.3d at 181 ("The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause."). The recognition of a distinction may be dispositive because if the issue of a forum selection clause's enforceability is separate from its interpretation, two different, and possibly conflicting, bodies of law may apply; in the absence of such a distinction, the law selected by the parties governs both the inquiry of enforceability and interpretation.

Some courts have concluded that "rather than making the court apply two different bodies of law" in one case, "[s]implicity argues for determining the validity and meaning of a forum selection clause," at least when "interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *See Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) (internal citations omitted); *see also* Restatement

(Second) of Conflict of Laws § 200 cmt. a (1971) ("[Q]uestions involving the validity of a contract, in respects other than capacity and formalities, are determined by the law chosen by the parties, if they have made an effective choice.").

This Court, however, is persuaded that "[t]o ensure that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses[,] federal law must govern their enforceability." *Martinez*, 740 F.3d at 220.[5]  Nevertheless, regardless of whether the enforceability of this forum selection provision is considered under federal law or the parties' chosen law, Defendant Tata America, like its non-signatory co-Defendants, cannot enforce the provision against Plaintiffs.

## II.   <u>Whether the Forum Selection Clause Encompasses Tort Claims.</u>

"[A] court can effectuate the parties' agreement concerning the forum only if it interprets the forum clause under the chosen law."  *See Yavuz I*, 465 F.3d at 428.  Thus, the Court must first determine whether the forum selection clause applies to the type of claims asserted.

Plaintiffs argue that the forum selection clause cannot apply to tort claims asserted against non-parties to the Agreement.  *See* **Doc. 17, at 11–14**.  Defendant argues that the tort claims asserted against it "clearly arise from and relate to the Sale and Purchase Agreement and the ultimate failed transaction at issue," and that these claims "fall within the scope" of the Agreement's broad language.  *See* **Doc. 20, at 7–8**.  The Court agrees.

The Agreement provides: "Each of the parties consents to the exclusive jurisdiction and venue of the Courts of England and Wales in any suit or proceeding *arising out of or relating to this Agreement or the transactions contemplated by this Agreement*."  *See* **Doc. 9-1, Ex. A, at 45**

---

[5] The Court recognizes that this result appears anomalous because in this case, it would give effect to the latter half of the parties' choice-of-law clause, which provides that the Agreement shall be construed according to the laws of England and Wales, while overriding the preceding half which states that the Agreement shall also be governed by the same law.

§ **10.13** (emphasis added).  To determine the scope of the forum selection clause, the Court must interpret the language under English law.  *See Kelvion*, 918 F.3d at 1092.  The parties largely fail to analyze this issue under the proper law.

Under English law, whether a claim falls within a forum selection clause is a question of interpretation of the clause.  *See Skype Techs. SA v Joltid Ltd*, [2009] EWHC 2783 (Ch) at [14]. Plaintiffs cite one case, *AMT Futures Ltd v. Marzillier, Dr Meier & Dr Guntner Rechtsanwaltsgesellschaft mbH*, [2017] UKSC 13, to stand for the proposition that the law of the United Kingdom holds that "tort claims related to a contract containing a forum selection clause…[are] properly prosecuted in the jurisdiction where the wrongdoing or harm occurred and not the jurisdiction indicated by the forum selection clause."  *See* **Doc. 17, at 13–14**.  Plaintiffs misstate the holding in *AMT Futures*.

Notably, the court in *AMT Futures* was limited to reviewing Article 5.3 of the Judgments Regulation, legislation which regulates jurisdiction and the recognition and enforcement of judgments between European Union member states.  Article 5.3 provides that "A person domiciled in a Member State may, in another Member State, be sued…in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur."  *See* Council Regulation (EC) No 44/2001 of 22 December 2000.  The tort at issue was the alleged breach of the forum selection clause in the parties' contract which required plaintiff and defendant to bring disputes in England.  *See AMT Futures*, at [1]–[6].  The plaintiff alleged that defendant breached the clause by inducing plaintiff's dissatisfied clients to sue in Germany.

Before the court was the interpretation of the phrase "where the harmful event occurred" in Article 5.3, not the forum selection clause.  There was "no dispute" that the event giving rise to the harm, "the alleged inducement of the former clients by [defendant] to commence the German

legal proceedings, occurred in Germany." *Id.* at [23].  The plaintiff nonetheless attempted to distinguish the language of Article 5.3 and alleged that the damage it suffered was felt in England because the forum selection clause that was breached provided disputes must be settled in England. *Id.*  The court flatly rejected this argument and held that it was "relatively straightforward" that plaintiff suffered harm in Germany not England because "the raising of those proceedings in Germany was the event which gave rise to the damage."  *Id.* at [24]–[28] (rejecting plaintiff's effort to "craft a special rule…[when] the contractual term which has been breached is an exclusive jurisdiction clause").

AMT *Futures* is inapplicable to this Court's interpretation of the forum selection clause for several reasons.  First, *AMT Futures* did not purport to interpret the parties' forum selection clause nor were the words interpreted in Article 5.3 alike or relevant to the instant proceeding.  Second, even if *AMT Futures* were applicable to this case, Plaintiffs' construction of the holding would not save them, as here, Plaintiff Unitednet, a United Kingdom business, and Plaintiff Russell, a United Kingdom resident, likely felt the harm and suffered damage in the United Kingdom, not New Mexico.

Turning to other English law cases, the Court finds Plaintiffs' arguments unavailing. Generally, "any jurisdiction[6] or arbitration clause in an international commercial contract should be liberally construed."  *Fiona Trust & Holding Corp v Privalov*, [2007] EWCA Civ 20 at [18]; *Skype Techs.*, [2009] EWHC 2783 (Ch) at [14] (noting that there is no distinction between interpretating a forum selection clause and an arbitration clause).  The words "arising out of should cover *every dispute* except a dispute as to whether there was ever a contract at all."  *Fiona Trust*, [2007] EWCA Civ 20 at [18] (emphasis added) (internal quotations omitted).  Additionally, the

---

[6] Forum selection clauses are often referred to as "jurisdiction" or "exclusive jurisdiction" clauses in English cases.

words "arising out of" or "in connection with" can apply to claims arising from "pre-inception" or before the contract was even formed.  *See UBS AG v HSH Nordbank AG*, [2009] EWCA Civ 585 at [82].  Thus, "[t]he proper approach to the construction of clauses agreeing [to] jurisdiction is to construe them widely and generously."  *Id.*

Here, Plaintiffs' tortious interference claim rests on the allegation that "Defendants each played an active and substantial part in causing Plaintiff Unitednet *to lose the benefits of the contract*."  *See* **Doc. 1, ¶¶ 94–98** (emphasis added).  Similarly, the basis for Plaintiffs' conspiracy claim is that "Defendants focused on preventing Plaintiff Unitednet *from completing the Asset Purchase Agreement*."  *Id.* ¶ **103** (emphasis added).  On the quantum meruit claim, Plaintiffs plead that "Plaintiff Russell expended a substantial amount of time and energy in an effort to *complete Plaintiff Unitednet's purchase* of the [telecommunication network]," and due to each Defendants' wrongful conduct, Plaintiff Russell received no compensation for his work.  *Id.* **¶¶ 120–21** (emphasis added).  Plaintiffs' claim for aiding and abetting breach of fiduciary duty also rests on Tata America's conduct in relation to the purchase.  *Id.* **¶¶ 109–19**.

Construing the forum selection clause liberally, the Court concludes that Plaintiffs' tort claims, which stem from Defendant Tata America's alleged interference in the successful performance of the Agreement, "arise out of" or "relate to" the "transactions contemplated" by the Agreement.  Plaintiffs provide no basis for the Court to limit the interpretation of this forum selection clause to just breach of contract claims.  *See* **Doc. 17, at 1** (admitting that "Defendant[] [is] right that the claims asserted by Plaintiffs relate to an Asset Purchase Agreement").  Therefore, the Court finds that the forum selection clause also encompasses the present tort claims.

Next, the Court must determine whether the forum selection clause is mandatory or permissive.  A forum selection clause is mandatory if it contains clear language that jurisdiction is

proper only in the specified forum and it is permissive if it authorizes jurisdiction in a specified forum but does not prohibit litigation elsewhere. *See Excell*, 106 F.3d at 321; *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498–500 (10th Cir. 2002). English law also governs this determination, however, here, the parties do not dispute that the forum selection provision is mandatory. Therefore, because the language of the forum selection clause is mandatory and encompasses the instant tort claims, the only way for Plaintiffs to avoid the effect of the clause is to demonstrate that Defendant cannot enforce the clause against them.

### III.  Whether a Non-Signatory Can Enforce the Forum Selection Clause.

The Court now considers whether the forum selection clause may be enforced by non-signatories against signatories.[7] The parties dispute whether the enforceability by non-signatories of a forum selection clause is an issue of interpretation, to which Plaintiffs argue English law applies, or one of enforceability, to which Defendant argues federal law applies.

Courts decidedly take two different approaches—some considering the question of third-party enforcement as one of enforceability of the forum selection clause, and others consider the question as one of interpretation of the clause. *Compare Martinez*, 740 F.3d at 217–18 (concluding that to determine "whether the claims and parties involved in the suit are subject to the forum selection clause" requires a court to answer an "*interpretive* question"), *Collins*, 874 F.3d at 180–81 ("A court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause…In other words, it decides 'whether the claims and parties involved in the suit are subject' to the clause."), *and Zydus Worldwide DMCC v. Teva*

---

[7] Plaintiff Russell was not a signatory to the Agreement; Plaintiff Unitednet is the sole signatory plaintiff. However, the Agreement shows that Russell signed on behalf of Unitednet. **Doc. 9-1, Ex. A, at 47**. The parties frame their arguments as the enforcement by non-signatories against signatories, and do not discuss or dispute whether Russell may be considered a signatory; thus, the Court will assume, without deciding, that Russell is also bound by the Agreement.

*API Inc.*, 461 F. Supp. 3d 119, 130–31 (D.N.J. 2020) ("In particular, state law covers the very issue presented here: 'whether the [forum selection] clause applies to a non-signatory as an intended beneficiary or closely related party'" because "the intended scope of a clause is not a procedural issue, but a substantive question 'of contract interpretation.'") *with Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, No. 20 CIV. 3951 (LGS), 2021 WL 1668134, at *4, n.1 (S.D.N.Y. Apr. 28, 2021) (observing that the parties had not explained "why principles of Canadian contract *interpretation* would decide the question of whether a non-signatory is bound by the Agreement" and concluding that "courts in this Circuit have consistently applied federal law, even where the agreement contains a choice of law provision specifying the law of a different jurisdiction").

The Court concludes that in this case, the question of the enforceability of the Agreement by a non-signatory can be resolved only by considering the scope of the clause and the Agreement, and accordingly, English law applies. However, even if federal law governed this question, the result is the same. Defendant Tata America cannot enforce the forum selection clause against Plaintiffs because the express terms of the Agreement provide otherwise.

### A. Defendant Cannot Enforce the Agreement under English Law.

Plaintiffs argue that the law of the United Kingdom "holds that non-parties to a contract are not bound by a forum selection clause contained in that contract and cannot enforce the clause." *See* **Doc. 17, at 3**. Defendant argues that even if the Court applies English law, the forum selection clause may be enforced by non-signatories and the cases cited by Plaintiffs are unpersuasive. *See* **Doc. 20, at 10**. The Court disagrees.

Under English law, one clause in the Agreement is dispositive to whether Defendant, a non-signatory, may enforce the forum selection clause against Plaintiffs. Section 10.7 of the

Agreement appears to prevent third parties from benefitting from any portion of the contract, and provides, in relevant part, that:

> This Agreement shall inure to the benefit of and be binding upon the parties to this Agreement and their respective successors and permitted assigns. *Nothing in this Agreement, express or implied, is intended to confer upon any Person other than UnitedNet or the Tata Group Sellers (or their successors or permitted assigns), any rights or remedies under or by reason of this Agreement.*

*See* **Doc. 9-1, Ex. A, at 43–44 § 10.7** (emphasis added).  Plaintiffs mention the clause only in passing, *see* **Doc. 17, at 5–6**, and Defendant fails to discuss the clause at all.

In *Morgan Stanley & Co International Plc v. China Haisheng Juice Holdings Co Ltd* [2009] EWHC 2409 (Comm), the court faced a similar provision.  There, the signatory plaintiff, Morgan Stanley, argued that the signatory defendant, China Haisheng, was obligated to bring claims against a non-signatory, Morgan Stanley Asia, in England, according to the forum selection clause in Morgan Stanley and China Haisheng's contract.  Stated differently, Morgan Stanley was seeking a declaration of the English court that a non-signatory, Morgan Stanley Asia, could enforce a forum selection clause against a signatory, China Haisheng.

Like Plaintiffs, China Haisheng argued that the forum selection clause only applied to the parties to the agreement, China Haisheng and Morgan Stanley.  *Id.* at [19].  Like Defendant, Morgan Stanley argued that the clause required China Haisheng to bring its claims against a non-signatory, Morgan Stanley Asia, in England because the claims "arose out of or in connection with the Master Agreement," and the forum selection clause was not restricted to claims against Morgan Stanley.  *Id.* at [14].

The court first reasoned that whether a non-signatory could be bound by the terms of the forum selection clause required an interpretation of the clause and the contract.  *Id.* at [21].  Notably, the parties' agreement contained a third-party clause which stated: "Subject to this clause, a person who is not a party to this Agreement has no right…to enforce any term of this

Agreement."  *Id.* at [13].  The court then found that the language in the forum selection clause which provided that "any suit, action or proceedings relating to any dispute arising out of or in connection with this Agreement" was capable of applying to a signatory's claims against a non-signatory affiliate of the signatory so long as those claims "relate[d] to a dispute which arises out of or in connection with the Master Agreement."  *Id.* at [23].

However, when considered in the context of the express disclaimer against third-party rights, the *Morgan Stanley* court concluded that a signatory was not obligated to bring claims against a non-signatory in the forum provided by the forum selection clause because that was contrary to the language prohibiting third parties from enforcing any provision of the contract.  *Id.* at [31] ("I have concluded that I am unable to accept that [China Haisheng, signatory] has promised to sue [Morgan Stanley Asia, non-signatory] in England. Its promise extended only to claims against [Morgan Stanley, signatory].").  In other words, the non-signatory, Morgan Stanley Asia, could not compel the signatory, China Haisheng, to bring claims against it in England.  *Id.* at [32] (permitting China Haisheng's claims against Morgan Stanley Asia to proceed in China).

Similarly, in *Team Y&R Holdings Hong Kong Ltd & Ors v. Ghossoub*, the court faced a similar third-party provision and explained that whether a forum selection clause should be understood as obligating a signatory to bring claims related to the contract against a non-signatory in the chosen forum "requires a consideration of the contract as a whole including not just the language used in the exclusive jurisdiction clause but also all other terms in the contract that may shed light on what the parties are likely to have intended."  [2017] EWHC 2401 (Comm) at [82].

Therefore, while "it is well established that the language of an exclusive jurisdiction clause is to be interpreted in a wide and generous manner, the starting position…[is that] absent plain language to the contrary, the contracting parties are likely to have intended neither to benefit nor

prejudice non-contracting third parties." *Id.* "[T]he absence of any express language in the exclusive jurisdiction clause that provides for the application of that term in relation to claims brought by or against third parties may be an indication that the clause was not intended either to benefit or prejudice such third parties." *Id.* Further still, "that any provision in the contract dealing with third parties indicates an intention that third parties should not acquire rights as against the contracting parties by virtue of the contract, *may be a further indication that the clause was not intended either to benefit or prejudice such third parties*." *Id.* (emphasis added). "If anything, [a third-party clause] suggests an intention that third parties should, save where the contrary expressly appears, be unaffected by anything contained in the [contract]." *Id.* at [83].

Defendant's effort to distinguish these cases from the instant proceedings are unavailing. Here, the Agreement contains a clause dealing with the rights of third parties, thus the principles articulated in *Team Y&R Holdings* and *Morgan Stanley* are applicable. *See Team Y&R Holdings*, [2017] EWHC 2401 (Comm) at [83] ("As in *Morgan Stanley* - and in contrast to the contracts under consideration in *Donohue* and in *Winnetka* - the [contract before the court] contains a term dealing with the position of third parties."). Accordingly, the forum selection clause cannot be read in isolation, it must be considered alongside the third-party provision. The forum selection clause was confined to the "each of the parties," and the third-party provision limited the parties who may reap the rights and remedies of the Agreement to "UnitedNet or the Tata Group Sellers (or their successors or permitted assigns)" alone.

Though the Court has construed the forum selection clause broadly and concluded that it applies to the instant tort claims, the Agreement's third-party provision evinces the intent of Plaintiffs and the Tata Signatories that non-signatory third parties, unless specifically provided for, were not intended to benefit from any provision in the Agreement, including the right to enforce

the forum selection provision.  Defendant has not argued that the third-party provision is invalid, does not apply, or that they are a successor or assign such that they may still benefit from the Agreement.  Defendant's conclusory assertion that an "affiliate or related entity" of a signatory may enforce the Agreement, *see* **Doc. 20, at 11**, is insufficient and contrary to the plain terms of the Agreement.  Thus, the Court must conclude the forum selection clause cannot be enforced by Defendant Tata America against Plaintiffs because the Agreement limits its enforcement to the signatories, their assigns, or successors.  The result is the same under federal law.

**B.  Defendant Cannot Enforce the Agreement under Federal Law.**

Generally, forum selection clauses should be given full effect in "a freely negotiated private international agreement."  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972).  Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992); *M/S Bremen*, 407 U.S. at 10.  In determining whether a forum selection clause is unreasonable, a court may consider evidence of fraud, overreaching or unequal bargaining power, including whether enforcement of the clause would be unjust.  *Accord Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992).  The party challenging enforcement of the forum selection clause "carries a heavy burden of showing that the provision itself is invalid."  *Id.*

Plaintiffs do not dispute the validity and enforceability of the Agreement or the forum selection clause generally.  Plaintiffs instead contend that Defendant, a non-signatory, may not enforce the clause.  Defendant Tata America asserts that it may enforce the forum selection provision because it is "closely related" to the Tata Signatories.  *See* **Doc. 20, at 3**.  Defendant asserts that Tata America is a wholly owned subsidiary of Defendant Tata India, meaning that "the

signatories are 'siblings' of Tata Communication America." *Id.*  Defendant argues that other courts have "routinely allowed non-signatories in Tata Communications America's position to come within the scope of an affiliate's forum selection clause." *Id.* **at 4–5.**

Generally, "a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  Nevertheless, that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.  *Accord Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009).

The Tenth Circuit has yet to consider whether a non-signatory may enforce a forum selection clause against a signatory.  Courts within the Tenth Circuit and other circuits have found, however, that a non-party to a contract containing a forum selection clause can nonetheless enforce it if the party is "closely related" to the dispute or "closely related" to another signatory such that it becomes foreseeable that the non-party will be bound.  *See, e.g.*, *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1211 (D.N.M. 2015) (internal quotations omitted); *OKCDT Enter., LLC v. CR Crawford Constr., LLC*, No. CIV-18-1134-G, 2019 WL 1320063, at *3 (W.D. Okla. Mar. 22, 2019); *see also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013).

The closely related test is a "vague standard" that some courts have "decomposed into two reasonably precise principles [:] 'affiliation' and 'mutuality.'" *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012); *see Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009) (conceding that the "close relationship standard is so vague as to be unworkable").  Other courts have taken a "common sense, totality of the circumstances approach that essentially inquires into whether, in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Accord Presbyterian Healthcare*,

122 F. Supp. 3d at 1212 (quoting *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010)). "Under this standard, courts have, for example, applied forum-selection clauses to corporations owned and controlled by the signatory, the contract's third-party beneficiaries, and, when the signatory is a company, to its officers and directors, and other companies that share officers and directors." *Id.* at 1211–12 (internal quotations and citations omitted).

The purpose of the "closely related" test is to "give[] parties who have come to an agreement the ability to enforce that agreement against the universe of entities who should expect as much—successors-in-interest, executive officers, and the like—without being overly persnickety about who signed on the dotted line." *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 337 (S.D.N.Y. 2018).

Here, Defendant Tata America is a part of the Tata Signatories' corporate family. A review of the Complaint makes clear that Plaintiffs allege that Tata America aided and conspired with other Defendants in bringing about the Agreement's demise and hindering Plaintiffs' access to funding. Plaintiffs also allege that Defendant Tata America was the entity who wrongfully notified Plaintiffs of the termination of the Agreement. *See* **Doc. 1, ¶ 79**. Thus, Tata America is likely sufficiently "closely related" to the Agreement.

Yet, Defendant's reliance on the closely related standard must fail. Other courts have declined to apply the closely related test where the contract contains a third-party provision like that in Section 10.7 of the Agreement. *See, e.g.*, *Casville Invs., Ltd. v. Kates*, No. 12 CIV. 6968 RA, 2013 WL 3465816, at *6 (S.D.N.Y. July 8, 2013) (holding that non-signatory plaintiffs could not invoke a forum selection provision against signatory and non-signatory defendants where the agreement "clearly states that no rights or remedies are conferred to nonparties"); *Bensinger v.*

*Denbury Res. Inc.*, No. 10-CV-1917 JG, 2011 WL 3648277, at *5 (E.D.N.Y. Aug. 17, 2011) (holding that signatory defendants could not enforce a forum selection provision against non-signatory plaintiffs where the agreement provided that "nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement"); *see also Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 446 (Tex. 2017) (holding that non-signatory defendants could not enforce a forum selection clause against signatory plaintiffs where the agreement "speaks directly to the matter at hand, and disavows any intent to extend contractual rights and remedies to anyone other than the parties and their permitted successors and assignees"); *Black v. Diamond Offshore Drilling, Inc.*, 551 S.W.3d 346, 352 (Tex. App. 2018) (same); *Crastvell Trading Ltd. v. Marengere*, 90 So. 3d 349, 354 (Fla. Dist. Ct. App. 2012) (same).

Thus, consistent with English courts, both state and federal courts have held that where there is language that states: "Neither this Agreement nor any provision hereof is intended to confer upon any person other than the parties hereto any rights or remedies," a non-signatory may not invoke a forum selection clause against signatories because they are barred from doing so under the express terms of the contract. *E.g.*, *Casville Invs.*, 2013 WL 3465816, at *5.

Here too, permitting Defendant Tata America to enforce the forum selection clause under the closely related standard would contravene the parties' expressed intent which precludes enforcement of any provision by a non-signatory third-party who is not a successor or assign of Plaintiff Unitednet or the Tata Signatories.  *See* **Doc. 9-1, Ex. A, at 43–44 § 10.7**.  Thus, the application of the closely related test is impermissible.  Moreover, given the language of Section 10.7, invocation of the forum selection clause by Defendant Tata America would not have been foreseeable because the Agreement expressly disclaimed enforcement of the contract's terms by

non-parties.  Under these circumstances, it would not be fair or reasonable to allow Defendant, a non-signatory that is neither a successor nor assign, to enforce the forum selection clause against Plaintiffs.

In sum, although tort claims arising from transactions related to the Agreement are covered under the forum selection clause, Defendant Tata America cannot enforce the clause because the Agreement expressly disclaims conferring any rights or remedies upon non-signatory third parties.

## IV.   Whether Dismissal is Appropriate under *Forum Non Conveniens*.

Having concluded that Defendant Tata America cannot enforce the forum selection clause, the Court's inquiry does not end.  The Court must now apply the traditional *forum non conveniens* doctrine and consider whether an adequate alternative forum exists, whether foreign law applies, and if so, the public and private interest factors.

On the threshold inquiry, the parties appear to concede that the United Kingdom is an adequate alternative forum. [8]  *See* **Doc. 17, at 10**.  However, the parties dispute whether foreign law applies.  Defendant argues that foreign law applies to Plaintiffs' claims because of the choice-of-law provision in the Agreement.  *See* **Doc. 9, at 12**.  Plaintiffs argue that because Defendant cannot enforce the forum selection provision, there are "no further questions of foreign law for the Court to decide – the law of the State of New Mexico governs Plaintiffs' claims." *See* **Doc. 17, at 10**.  Plaintiffs maintain that the tort claims are governed by New Mexican law because New Mexico is "the venue in which the conspiracy principally at issue was centered and where the wrongful conduct Plaintiffs allege principally occurred." *Id.* **at 11**.

---

[8] Although Plaintiffs did not dispute that the United Kingdom was an available forum, Defendant Tata America did not expressly admit jurisdiction in the United Kingdom. *See Gschwind*, 161 F.3d at 606 (explaining that a concession that a defendant will agree to subject themselves to a suit in the foreign forum "generally enough to make the alternative forum available").  Thus, as explained below, Tata America shall be required to submit to the jurisdiction of the Courts of England and Wales as a condition of dismissal.

If domestic law applies, the *forum non conveniens* doctrine is inapplicable.  *See Archangel*, 812 F.3d at 804.  To the extent not otherwise already established, the Court must conduct a conflicts-of-law analysis to determine which law applies to the controversy.  Because this is a diversity case, the Court must look to New Mexico's choice-of-law rules to determine what substantive law governs Plaintiffs' claims.  *See Klaxon*, 313 U.S. at 495–97; *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

In tort actions, New Mexico courts follow the doctrine of *lex loci delicti commissi* and apply the law of the place where the wrong occurred.  *See Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 613, 894 P.2d 386, 390.  The place of the wrong is the location of the "last act necessary to complete the injury."  *Id.* at 390 (internal quotations omitted).  "A tort is not complete until the plaintiff suffers a cognizable injury."  *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 15, 131 N.M. 772, 780, 42 P.3d 1221, 1229.   This is generally interpreted to mean that "the court applies the law of the place where the legal consequences—the legal injury— occurred."  *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1186 (D.N.M. 2010); *see also* Restatement (First) of Conflict of Laws § 377 cmt. a (1934); *First Nat. Bank in Albuquerque v. Benson*, 1976-NMCA-072, ¶ 9, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (referring to the rule as requiring application of "the law of the State of injury").

Claims for unjust enrichment, or *quantum meruit*, are distinct from tort or contract claims.  *See Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 19, 110 N.M. 173, 178, 793 P.2d 855, 860.  "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched." Restatement (First) of Conflict of Laws § 453.  New Mexico courts have also applied the law of the forum in which the operative events took place unless public policy requires the application of

New Mexico law.  *See Church v. Church*, 1981-NMCA-073, ¶¶ 16-17, 96 N.M. 388, 392, 630
P.2d 1243, 1247.

These rules are "fairly easy to apply when all of the events giving rise to a suit have
occurred in one state…The more difficult situation arises when the events giving rise to a suit
occur in a number of states [or forums]."  *M-Edge Accessories LLC v. Amazon.com Inc.*, No.
CIV.A. MJG-11-3332, 2013 WL 50251, at *3 (D. Md. Jan. 2, 2013) (internal quotations omitted).
In complex cases, New Mexico courts have applied the "most significant relationship" test in order
to determine "which state has the most significant relationship to the transaction and to the parties."
*See Ferrell v. Allstate Ins. Co.,* 2008-NMSC-042, ¶ 55, 144 N.M. 405, 421, 188 P.3d 1156, 1172);
*see also Armijo v. FedEx Ground Package Sys., Inc.*, 285 F. Supp. 3d 1209, 1219 n.6.

In this case, looking to the claims for tortious interference, breach of fiduciary duty, and
aiding and abetting breach of fiduciary duty,[9] the events that gave rise to the injury suffered by
Plaintiffs, financial loss and the loss of the benefits under the Agreement, allegedly occurred in
New Mexico, Virginia, the United Kingdom, and India.  The last act necessary to complete the
injury was the termination of the Agreement between Plaintiffs and the Tata Signatories.  *See Gen.
Assur. of Am., Inc. v. Overby-Seawell Co.*, 533 F. App'x 200, 206 (4th Cir. 2013) ("For claims of
tortious interference with contract and breach of fiduciary duty, the occurrence of the plaintiff's
injury marks the last event necessary to establish liability….[T]he place where Yadkin Valley
terminated its contract with [plaintiff] GAA [] was the last event necessary to render [defendant]
OSC liable for the alleged torts.").  Applying the place of the wrong test, the place where the
Agreement was terminated could only have been overseas; the Tata Signatories are based in the

---

[9] Reading the Complaint liberally, it is unclear what facts Plaintiffs assert form the basis of the fiduciary duty between
Defendant Lucero and Plaintiff Russell, and thus, the point of the wrongful act for the breach of the fiduciary duty and
aiding and abetting breach of fiduciary duty claims is also unclear.  Still, for these tort claims, the Court discerns that
the cognizable injury occurred when the Agreement was terminated by the Tata Signatories.

United Kingdom, Bermuda, and the Netherlands.  Applying the most significant relationship test, as alleged by the Complaint, the United Kingdom appears to have the most significant relationship to the parties, the claims, and the events that took place.

The same is true for the claim for civil conspiracy.  Viewing the facts most favorably to Plaintiffs, the alleged conspiracy to injure Plaintiffs' acquisition of the network likely began in July 2014, when the parties decided to change the structure of the deal.  *See* **Doc. 1, ¶ 26**.  The causally-related injury owing to the conspiracy was the alleged interference with Plaintiff Unitednet's acquisition of funding.  The last act necessary to complete this injury was also termination of the Agreement.  *See, e.g.*, *Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, No. CIV.A.3:05CV355, 2006 WL 5908727, at *6 (E.D. Va. Feb. 10, 2006) ("When determining what state's law is dictated by *lex loci delicti* with respect to conspiracy, the place of the wrong is the place of the first causally-related injury because the first legal injury produced by an alleged business conspiracy is the last act necessary for liability."); *Salser v. Dyncorp Int'l Inc.*, No. 12-10960, 2016 WL 627756, at *3 (E.D. Mich. Feb. 17, 2016) ("Civil conspiracy claims accrue when the plaintiff 'first suffered any damages resulting from the acts committed in furtherance of the conspiracy,' not where the conspiracy itself occurred.").  Here too, the place of the wrong appears to be a foreign forum or the United Kingdom.  Thus, the Court is persuaded that under *lex loci delicti*, English or foreign law would apply to the tort claims asserted.

On the *quantum meruit* claim, the place where the operative events took place appears to be the United Kingdom.  Plaintiff Russell, a resident of the United Kingdom, rendered his services in the United Kingdom and worked as a director on behalf of Unitednet, a business based in the United Kingdom.  *See* **Doc. 1, ¶ 120**.  Russell also worked with officers and employees of the Tata Signatories for a four-year period, and these parties are located in the United Kingdom, Bermuda,

and the Netherlands.  *Id.* ¶ 35.  The parties who were allegedly unjustly enriched by Russell's work were in New Mexico, Virginia, and India.  Though the operative events center around the United Kingdom, under the place of the wrong test, domestic law could plausibly apply to the *quantum meruit* claim.  However, the Court finds that foreign law applies to a majority of the parties' dispute.  Moreover, one issue that is not disputed is that the Agreement between the Tata Signatories and Plaintiffs, which are central in part to all of Plaintiffs' claims, contain an English choice-of-law provision.  Therefore, the second threshold inquiry is satisfied: foreign law applies to the claims in this dispute.

Even if foreign law applies, however, "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate."  *Rivendell Forest Prod., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993).  The Court must weigh between the two forums—New Mexico and the United Kingdom.  The private interest factors to be considered are:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Gschwind*, 161 F.3d at 606.

Plaintiffs argue that "the universal response of judicial systems worldwide to the COVID-19 pandemic has made videoconferencing a ubiquitous replacement for proceedings that formerly occurred only in-person, including jury trials."  *See* **Doc. 17, at 10**.  Plaintiffs also argue that Tata America, based in Virginia, "cannot possibly contend with a straight face that a trial in England is more convenient for it than a trial in the United States."  *Id.* **at 9–10**.

To note, the *forum non conveniens* inquiry is not limited solely to the convenience of the individual parties.  Here, the parties and the witnesses appear to be located all over the world,

including the United States, the United Kingdom, and India.  The Tata Signatories, whose officers

or employees are likely to be called as witnesses, are located in the United Kingdom, the

Netherlands, and Bermuda.  The nature and the number of sources of proof in each location is

unspecified.  But on the face of the Complaint, it appears that most of the witnesses in the case are

located abroad.  If this dispute were litigated in the United States, the parties and witnesses would

likely be required to travel extensively from the United Kingdom, India, the Netherlands, and

Bermuda to New Mexico and incur great expense.  However, neither party has presented evidence

that any non-party witnesses could not be compelled or would not be willing to attend trial in New

Mexico.  Still, the Court is not convinced that teleconferencing technology suffices to mitigate the

cost of travel and significant inconvenience that appears to favor litigation in the United Kingdom

or another foreign forum.

   Next, the Court considers the public interest factors.  These include:

  (1) administrative difficulties of courts with congested dockets which can be caused
  by cases not being filed at their place of origin; (2) the burden of jury duty on
  members of a community with no connection to the litigation; (3) the local interest
  in having localized controversies decided at home; and (4) the appropriateness of
  having diversity cases tried in a forum that is familiar with the governing law.

*Gschwind*, 161 F.3d at 606.

   Defendant argues that the public interest factors weigh in its favor, including the need to

make factual or legal findings based on foreign law, New Mexican jurors lack of connection to the

litigation, and the administrative burden and congestion of New Mexico courts.  *See* **Doc. 9, at 13**.

The Court agrees.

   To add, courts within the District of New Mexico face a heavy criminal and civil docket.

Additionally, this case will pose significant administrative difficulties, such as assisting the parties

in their efforts to obtain witnesses from around the globe for depositions and trial.  Though there

is some connection to New Mexico, as this is where Defendant Lucero resides and LGL has its

place of business, as pled in the Complaint, there are no allegations that any other Defendant or the matters at issue have any connection to New Mexico. Yet, there are strong ties to the United Kingdom. The Complaint does not raise a local dispute, and without a dispute local to the community of New Mexico, there is little public interest in subjecting the community to the burdens of jury service.

Further, though Plaintiffs do not seek damages for breach of contract, claims, counterclaims, or defenses raised by the parties may require a court to interpret the Agreement, thus necessitating the application of English law. Such issues are ones in which the United Kingdom has a strong interest in resolution by its own courts, and this Court is unfamiliar with the laws of the United Kingdom. Plaintiffs are citizens of the United Kingdom, and therefore, their choice of forum is entitled to less deference. Though Defendant may not enforce the forum selection clause, on the whole, the dispute has greater ties to the United Kingdom and Europe, and there is a more than *de minimis* interest in having a foreign forum litigate this dispute.

This Court concludes that the scales tip in favor of pursuing this litigation in the United Kingdom. Though conditions are "not mandatory for a proper *forum non conveniens* dismissal," they are "within the district court's discretion" and the Court finds them appropriate, if not necessary, to protect Plaintiffs' interest here. *See Yavuz II*, 576 F.3d at 1182. Accordingly, the Court grants Defendant's motion, subject to certain conditions. *See infra*. Because the Court dismisses the claims against Tata America under *forum non conveniens*, the Court need not address the other issues raised by the parties.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (**Docs. 8, 9**) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant's dismissal from this case is subject to the following conditions:

1. Defendant Tata Communications America, Inc. shall agree to submit to and accept the exercise of jurisdiction of the Courts of England and Wales in any subsequent United Kingdom proceeding on these matters.

2. Defendant Tata Communications America, Inc. shall waive any statute of limitations defenses that have arisen since the commencement of this action.

3. The claims against Defendant Tata Communications America, Inc. may be reinstated in the event that jurisdiction in the English courts is declined.

**IT IS FINALLY ORDERED** that within **fourteen (14) days** of the date of this Order, Plaintiffs shall show cause why the action should not be dismissed for *forum non conveniens* against the Non-Moving Defendants[10] for similar reasons.  Defendants shall file a reply within **fourteen (14) days** of Plaintiffs' response.

**IT IS SO ORDERED**.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Non-Moving Defendants include Defendants Tata India, Tata Sons, Lucero, and LGL.