## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITEDNET, LTD. and LEVI RUSSELL,

      Plaintiffs,

vs.                                                                    No. 1:21-cv-01081-KWR-JFR

TATA COMMUNICATIONS AMERICA, INC.,
TATA COMMUNICATIONS INDIA, LTD.,
TATA SONS PRIVATE, LTD., STEVEN LUCERO,
and LATINGROUP, LLC,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon the following:

- The Court's Order to Show Cause why the non-moving defendants should not be dismissed for *forum non conveniens* (**Doc. 28**);

- Plaintiffs' Motion to Reconsider (**Doc. 42**);

- Plaintiffs' Motion for Hearing (**Doc. 51**);

- Defendant Tata Sons Private Limited's Motion to Dismiss for lack of Personal Jurisdiction (**Doc. 33**); and

- Defendant Tata Communications India Limited's Motion to Dismiss for lack of Personal Jurisdiction (**Doc. 34**).

Having reviewed the parties' pleadings and the relevant law, the Court rules as follows:

- The Court concludes that Plaintiffs have not shown cause why the non-moving Defendants should not be dismissed for *forum non conveniens*. Therefore, the

claims against the remaining Defendants are **DISMISSED** for *forum non conveniens*;

- Plaintiffs' Motion for Hearing (**Doc. 51**) is **DENIED;**

- Plaintiffs' Motion to Reconsider (**Doc. 42**) is **DENIED**;

- Defendant Tata Sons Private Limited's Motion to Dismiss (**Doc. 33**) is **DENIED AS MOOT**; and

- Defendant Tata Communications India Limited's Motion to Dismiss (**Doc. 34**) is **DENIED AS MOOT**.

The Court previously dismissed the claims against Defendant Tata Communications America, Inc. for *forum non conveniens*. The Court found that (1) under conflict of law principles the claims arose under the laws of the United Kingdom and (2) the parties agreed that the United Kingdom was an adequate and available forum. Moreover, the Court balanced the discretionary factors and concluded that this case should not be adjudicated in this forum. The Court proposed several conditions as parts of its dismissal. The Court issued an order to show cause why the claims against the remaining defendants should not be dismissed for the same reasons. Having considered the responses, the Court concludes that the claims against Defendants shall be dismissed for *forum non conveniens*.

Defendants Tata Communications India Ltd. and Tata Sons Private Ltd. filed motions to dismiss for lack of personal jurisdiction. Because the Court dismissed these defendants for *forum non conveniens*, the Court denies their motions as moot.

## BACKGROUND

This case arises from an unsuccessful business deal regarding the sale of a fiber optic network running between the United Kingdom and the Netherlands. Plaintiff Unitednet, Ltd. is a

foreign corporation doing business in the United Kingdom.  *See* **Doc. 1, ¶ 1**.  Plaintiff Levi Russell, a resident of the United Kingdom, was a director for Unitednet.  *Id.* **¶¶ 2, 30**.  In 2016, Plaintiff Unitednet entered into a Sale and Purchase Agreement (the "Agreement") with Tata Communications (UK) Ltd., Tata Communications (Netherlands) B.V., and Tata Communications (Bermuda) Ltd. (collectively, the "Tata Signatories"), non-parties to this suit, to purchase a telecommunications system.[1]  The system is an undersea and land-based fiber optic network that spans 1,100 miles and runs from the United Kingdom to the Netherlands.  *Id.* **¶ 19**.  The acquisition was never completed, and Plaintiffs allege that the Agreement was terminated as a result of tortious conduct by Defendants, non-signatories to the Agreement.

The idea of the acquisition began in 2013.  Plaintiffs allege that Defendant Steven Lucero, a resident of New Mexico, expressed interest in purchasing the network from the Tata Signatories. *Id.* **¶¶ 20–21**.  The chairman of Defendant Tata Sons Private, Ltd. ("Tata Sons"), a foreign corporation based in India, and Defendant Lucero reached an agreement in principle with the Tata Signatories to sell the network at a price below market value.  *Id.* **¶ 21**.  In January 2014, Defendant Latin Group, LLC ("LGL"), a Delaware corporation with its principal place of business in New Mexico, to which Defendant Lucero is allegedly the principal owner, entered into a preliminary agreement with the Tata Signatories to purchase the network.  *Id.*

Defendant Lucero, a key player in the deal, later decided to purchase the network through a different entity, and thus, Unitednet, at the direction of Lucero, was formed for the purpose of completing the transaction.  *Id.* **¶¶ 14, 29–30**.  Defendant Lucero allegedly induced Plaintiff

---

[1] The Court notes, although it is unclear, that Plaintiffs appear to refer to these three parties, or possibly, the entire Tata global business, collectively as "Tata Communications."  *Compare, e.g.*, **Doc. 1, ¶¶ 13, 15, 17** *with* **¶ 16** (referring to Tata Comm. India, Tata Comm. America, and Tata Sons Priv. as "Tata Defendants").  To avoid confusion, where Plaintiffs generically referred to the parties as "Tata Communications," the Court reasonably inferred based on Plaintiffs' pleadings which specific Tata entity was referenced and so stated.

Russell to work on the deal "with promised compensation in the form of a percentage share of Plaintiff Unitednet." *Id.* ¶ **14**.

From 2013 to 2017, Plaintiff Russell alleges that he spent "hundreds of days and thousands of hours working with Tata [Signatories'] executives, legal counsel, sales personnel, and operations employees" to complete the purchase. *Id.* ¶¶ **34–35**. However, as the parties began to work towards the acquisition, Defendant Lucero allegedly "played a dual game in which he exerted near total control over the negotiations for the purchase" of the network, including controlling the negotiations on behalf of Plaintiff Unitednet, while simultaneously "working behind the scenes" with Defendants Tata Communications America, Inc. ("Tata America"), a corporation with its principal place of business in Virginia, Tata Communications India, Ltd. ("Tata India"), a foreign corporation based in India, and others, to control the position that the Tata Signatories would take in negotiations. *Id.* ¶ **22**.

All told, Plaintiffs allege that Defendants Lucero, Tata Sons, Tata America, and Tata India conspired to change the structure of the deal to demand an approach to purchasing the network that was "contrary to industry standards" to prevent Plaintiff Unitednet from acquiring the network. *Id.* ¶ **59**. Plaintiffs allege that these Defendants then "conspired to manufacture deadlines" for Unitednet's acquisition of funding. *Id.* ¶¶ **60, 68–69**.

Plaintiffs further allege these Defendants conspired to require that Unitednet provide a letter from a bank or investor showing that Unitednet had secured $10.75 million in funds for the deal. *Id.* ¶¶ **38, 62–63**. According to Plaintiffs, this funding letter requirement was merely a "ruse" devised by Defendants Lucero, Tata America, and Tata India to hinder Unitednet's completion of the transaction. *Id.* ¶¶ **40–42.** Plaintiffs maintain that Defendant Lucero was responsible for securing funding for Unitednet's purchase of the network, yet Lucero repeatedly

failed to do so.  *Id.* **¶¶ 64, 75**.  Plaintiffs assert that despite attempting to meet all the demands placed on Unitednet, Defendant Lucero actively sought to prevent Plaintiff Unitednet from securing funding, and instead, intended to complete the purchase of the network with another company, namely, Defendant LGL.  *Id.* **¶¶ 58, 68**.

Eventually, after months without the requisite funding letter, Defendant Tata America notified Plaintiffs of the termination of the Agreement with the Tata Signatories.  *Id.* **¶ 79**. Plaintiffs allege that Defendant Lucero conspired with Defendants Tata Sons, Tata America, and Tata India to terminate the deal.  *Id.* **¶ 80**.  Plaintiffs nonetheless attempted to revive the Agreement through alternative means of funding and the Tata Signatories asked for time to consider this new proposal.  *Id.* **¶ 83**.  However, Plaintiffs allege that Defendant Lucero worked with Defendants Tata Sons, Tata America, and Tata India to interfere with the decision of the Tata Signatories.  *Id.* **¶ 84**.  The Tata Signatories rejected Plaintiffs' offer and the deal collapsed.  *Id.* **¶ 83**.

As a result, Plaintiffs Unitednet and Russell filed suit asserting the following claims:

Count I:       Tortious Interference with Contract (against all Defendants)

Count II:      Civil Conspiracy (against all Defendants)

Count III:     Breach of Fiduciary Duty (against Defendant Lucero)

Count IV:     Aiding and Abetting Breach of Fiduciary Duty (against Defendants Tata America, Tata India, Tata Sons, and LGL)

Count V:      Quantum Meruit (against all Defendants)

Defendant Tata America filed a motion to dismiss for *forum non conveniens*, or in the alternative, for failure to state a claim upon which relief can be granted.  Defendant argued that Plaintiffs' suit is centered on the Agreement, which has an exclusive forum selection clause that requires this case be brought in the Courts of England and Wales.  Defendant also argues that Plaintiffs' allegations are conclusory and insufficient to maintain the claims against Defendant.

The Court concluded that the forum selection clause was valid.  However, the Court concluded that the non-signatory defendants could not enforce the forum selection clause against Plaintiffs.  The Court nevertheless concluded that dismissal of Defendant Tata Communications America, Inc. for *forum non conveniens* was appropriate. It found that (1) the United Kingdom was an appropriate and available forum and (2) under conflict of laws principles, the claims arose under the laws of the United Kingdom.  The Court next analyzed the discretionary factors and concluded that dismissal for *forum non conveniens* was appropriate.  As part of that decision, the Court issued an order to show cause why that dismissal should not apply to the non-moving defendants, and whether there were any objections to the conditions the Court set for dismissal.

The parties filed responses to the Court's order to show cause, and Plaintiffs moved for the Court to reconsider its dismissal.

## DISCUSSION

### I.      This case is dismissed under *forum non conveniens*.

In a previous opinion, the Court dismissed the claims against Defendant Tata Communications America, Ltd. for *forum non conveniens*. The Court issued an order directing Plaintiffs to show cause why the case should not be dismissed as to the non-moving Defendants as well:

> Plaintiffs shall show cause why the action should not be dismissed for *forum non conveniens* against the Non-Moving Defendants[2] for similar reasons.  Defendants shall file a reply within **fourteen (14) days** of Plaintiffs' response.

**Doc. 28 at 32**. The Court may dismiss non-moving defendants under *forum non conveniens* because the defendants are in a similar position or the claims against the defendants are integrally related. *Bonny v. Soc'y of Lloyd's,* 3 F.3d 156, 162 (7th Cir. 1993); *Adams v. Raintree Vacation*

---

[2] The Non-Moving Defendants include Defendants Tata India Ltd., Tata Sons Private Ltd., Mr. Lucero, and LGL.

*Exch., LLC,* 702 F.3d 436, 553 (7th Cir. 2012).  Nevertheless, the Court issued the order to show cause above.  In response, Plaintiffs asked the Court to reconsider its *forum non conveniens* analysis, but otherwise did not explain why the Court should not apply that analysis to the non-moving defendants and dismiss them as well.  Plaintiffs also filed a one-page motion to reconsider, which expressly incorporated and referred to its response to the order to show cause.  For the reasons stated below, the Court (1) declines to reconsider its dismissal of Tata Communications America for *forum non conveniens*, and (2) dismisses the claims against the remaining Defendants for *forum non conveniens*.

### A.     Reconsideration of the dismissal of Defendant Tata Communication America, Inc. is not appropriate.

Plaintiffs one page motion to reconsider did not include the basis for reconsideration of the dismissal of Defendant Tata Communications America.  Plaintiffs did not explain whether its motion was filed under Rule 59 or Rule 60, or whether Plaintiffs request the Court reconsider an interlocutory order. *See* **Doc. 42**. Even if it was an interlocutory order, the Court usually exercises its discretion and applies the Rule 59(e) standards.

Assuming Plaintiffs move to reconsider an interlocutory order, "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus*., 495 F.3d at 1225. A motion to reconsider an interlocutory order "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC,* No. 06–cv–00037–PAB–CBS, 2010 WL 420046, *3 (D. Colo. Feb. 1, 2010). Moreover, the Court has discretion to "reconsider" an interlocutory order under Fed. R. Civ. P. 54(b). *Id*. ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of

7

the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The Court generally exercises its discretion and finds the Rule 59(e) framework useful when considering a motion to reconsider an interlocutory order.  Motions for reconsideration are

> "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion ... Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."

*Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000) (citations omitted). Plaintiffs did not engage or mention any of these standards in its motion or explain why reconsideration was appropriate under any of these standards.  Therefore, the Court finds that Plaintiffs did not carry their burden to show that reconsideration is appropriate.

Even if the Court were to consider the merits on reconsideration, as explained below, the Court finds reconsideration is not appropriate.

Finally, Plaintiffs summarily request the Court extend the deadline to appeal the dismissal of Tata Communications America.  **Doc. 31 at 15**.  However, Plaintiffs do not explain whether the Court's dismissal was an interlocutory or a final order, whether the appellate clock has been tolled by Plaintiffs' motion to reconsider, or under what rule the Court may extend the deadline to appeal. The Court generally does not address issues which have not been briefed by the parties.  Therefore, Plaintiffs have not carried their burden to show that extension of the appeal deadline is appropriate.

### B.   Relevant Law on *forum non conveniens.*

The *forum non conveniens* doctrine "permits a court to dismiss a case when an adequate alternative forum exists in a different judicial system and there is no mechanism by which the case may be transferred."  *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir.

2019).  "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient."  *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009) ("*Yavuz II*") (quoting *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998)).

Ordinarily, there are two threshold questions in the *forum non conveniens* determination: first, "whether an adequate alternative forum exists," and second, "whether foreign law applies to the dispute."  *See Yavuz II*, 576 F.3d at 1171. "[T]he court must confirm that foreign law is applicable, because *forum non conveniens* is improper if foreign law is not applicable and domestic law controls."  *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (internal quotations and citations omitted).  A defendant bears the burden of proving that an alternative forum exists, and that this forum "is both available and adequate."  *See Gschwind*, 161 F.3d at 606.

If both questions are answered affirmatively, a court must then evaluate private-interest factors, such as the convenience of the parties, and various public-interest considerations.  *See Atl. Marine*, 571 U.S. at 62–63.  There is a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "A foreign plaintiff's choice of forum, however, warrants less deference. When the plaintiff is foreign, the private and public interest factors need not so heavily favor the alternate forum." *Gschwind*, 161 F.3d at 606.

**C.   The United Kingdom is an adequate and available forum, and the law of the United Kingdom applies to the claims in this case.**

On the threshold inquiry, the parties appear to concede that the United Kingdom is an adequate alternative forum and an available forum.  Therefore, the Court will assume that is true.

9

However, the parties dispute whether foreign law applies.  The Court previously conducted a conflict of laws analysis and concluded that the claims are governed by the laws of the United Kingdom.  Plaintiffs argue that the claims are governed by the laws of New Mexico, where Defendants Lucero and Latin Group, LLC reside.  The Court disagrees.

As the Court previously explained, and explains below, the place where the last act giving rise to liability occurred is the United Kingdom, where the contract was terminated.  A tort is not complete until an injury is suffered, and the injury was the termination of the Agreement in the United Kingdom.  **Doc. 28 at 26**.

Previously, Defendant Tata Communications America argued that foreign law applies to Plaintiffs' claims because of the choice-of-law provision in the Agreement.  *See* **Doc. 9, at 12**. Plaintiffs argued that because Defendant cannot enforce the forum selection provision, there are "no further questions of foreign law for the Court to decide – the law of the State of New Mexico governs Plaintiffs' claims."  *See* **Doc. 17, at 10**.  Plaintiffs maintain that the tort claims are governed by New Mexico law because New Mexico is "the venue in which the conspiracy principally at issue was centered and where the wrongful conduct Plaintiffs allege principally occurred."  *Id.* **at 11**.

If domestic law applies, the *forum non conveniens* doctrine is inapplicable.  *See Archangel*, 812 F.3d at 804.  To the extent not otherwise already established, the Court must conduct a conflicts-of-law analysis to determine which law applies to the controversy.  Because this is a diversity jurisdiction case, the Court must look to New Mexico's choice-of-law rules to determine what substantive law governs Plaintiffs' claims.  *See Klaxon*, 313 U.S. at 495–97; *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

In tort actions, New Mexico courts follow the doctrine of *lex loci delicti commissi* and apply the law of the place where the wrong occurred. *See Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 613, 894 P.2d 386, 390. The place of the wrong is the location of the "last act necessary to complete the injury." *Id.* at 390 (internal quotations omitted). "A tort is not complete until the plaintiff suffers a cognizable injury." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 15, 131 N.M. 772, 780, 42 P.3d 1221, 1229. This is generally interpreted to mean that "the court applies the law of the place where the legal consequences—the legal injury— occurred." *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1186 (D.N.M. 2010); *see also* Restatement (First) of Conflict of Laws § 377 cmt. a (1934); *First Nat. Bank in Albuquerque v. Benson*, 1976-NMCA-072, ¶ 9, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (referring to the rule as requiring application of "the law of the State of injury").

Claims for unjust enrichment, or *quantum meruit*, are distinct from tort or contract claims. *See Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 19, 110 N.M. 173, 178, 793 P.2d 855, 860. "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched." Restatement (First) of Conflict of Laws § 453. New Mexico courts have also applied the law of the forum in which the operative events took place unless public policy requires the application of New Mexico law. *See Church v. Church*, 1981-NMCA-073, ¶¶ 16-17, 96 N.M. 388, 392, 630 P.2d 1243, 1247.

These rules are "fairly easy to apply when all of the events giving rise to a suit have occurred in one state…The more difficult situation arises when the events giving rise to a suit occur in a number of states [or forums]." *M-Edge Accessories LLC v. Amazon.com Inc.*, No. CIV.A. MJG-11-3332, 2013 WL 50251, at *3 (D. Md. Jan. 2, 2013) (internal quotations omitted).

In complex cases, New Mexico courts have applied the "most significant relationship" test in order to determine "which state has the most significant relationship to the transaction and to the parties." *See Ferrell v. Allstate Ins. Co.,* 2008-NMSC-042, ¶ 55, 144 N.M. 405, 421, 188 P.3d 1156, 1172); *see also Armijo v. FedEx Ground Package Sys., Inc.*, 285 F. Supp. 3d 1209, 1219 n.6.

In this case, looking to the claims for tortious interference, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty, the events that gave rise to the injury suffered by Plaintiffs, financial loss and the loss of the benefits under the Agreement, allegedly occurred in New Mexico, Virginia, the United Kingdom, and India.  The last act necessary to complete the injury was the termination of the Agreement between Plaintiffs and the Tata Signatories.  *See Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 533 F. App'x 200, 206 (4th Cir. 2013) ("For claims of tortious interference with contract and breach of fiduciary duty, the occurrence of the plaintiff's injury marks the last event necessary to establish liability….[T]he place where Yadkin Valley terminated its contract with [plaintiff] GAA [] was the last event necessary to render [defendant] OSC liable for the alleged torts."); *Horizon Ag-Prods. v. Precision Sys. Eng'g, Inc.,* No. 09-cv-1109 JB/DJS. 2010 WL 4054131, at *5 (D.N.M. Sept. 28 2010) ("To properly plead a claim of tortious interference with existing contractual relationships, a plaintiff must allege that… damages flowed from the breached contract.").   Applying the place of the wrong test, the place where the Agreement was terminated could only have been overseas; the Tata Signatories are based in the United Kingdom, Bermuda, and the Netherlands.  The terminated Agreement contained an English choice of law provisions. Moreover, Plaintiffs resided in the United Kingdom when the Agreement was terminated, and therefore suffered a loss, or were injured, in the United Kingdom.  *See, e.g., Guidance Endodontics, LLC, v. Dentsply International, Inc.*, 633 F. Supp. 2d 1138 (D.N.M. 2009) (applying New Mexico law where plaintiffs lost sales and were New Mexico residents, and

therefore suffered losses in New Mexico); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1224 (D.N.M. 2010) ("Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred."), *citing First Nat'l Bank in Albuquerque v. Benson,* 89 N.M. 481, 482, 553 P.2d 1288, 1289 (Ct.App.1976)(referring to the rule as requiring application of "the law of the State of injury"); *Kennicott v. Sandia Corp.*, 314 F. Supp. 3d 1142 (D.N.M. 2018) ("if the Plaintiffs suffered harm in New Mexico, then New Mexico would apply its own laws. Otherwise, New Mexico would not apply its own law.").  Even if the Court applied the most significant relationship test, as alleged by the Complaint, the United Kingdom appears to have the most significant relationship to the parties, the claims, and the events that took place.

The same is true for the claim for civil conspiracy.  Viewing the facts most favorably to Plaintiffs, the alleged conspiracy to injure Plaintiffs' acquisition of the network likely began in July 2014, when the parties decided to change the structure of the deal.  *See* **Doc. 1, ¶ 26**.  The causally related injury owing to the conspiracy was the alleged interference with Plaintiff Unitednet's acquisition of funding.  The last act necessary to complete this injury was also the termination of the Agreement.  *See, e.g.*, *Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, No. CIV.A.3:05CV355, 2006 WL 5908727, at *6 (E.D. Va. Feb. 10, 2006) ("When determining what state's law is dictated by *lex loci delicti* with respect to conspiracy, the place of the wrong is the place of the first causally-related injury because the first legal injury produced by an alleged business conspiracy is the last act necessary for liability."); *Salser v. Dyncorp Int'l Inc.*, No. 12-10960, 2016 WL 627756, at *3 (E.D. Mich. Feb. 17, 2016) ("Civil conspiracy claims accrue when the plaintiff 'first suffered any damages resulting from the acts committed in furtherance of the conspiracy,' not where the conspiracy itself occurred.").  Here too, the place of the wrong appears

to be a foreign forum or the United Kingdom.  Thus, the Court is persuaded that under *lex loci delicti*, English or foreign law would apply to the tort claims asserted.

On the *quantum meruit* claim, the place where the operative events took place appears to be the United Kingdom.  Plaintiff Russell, a resident of the United Kingdom, rendered his services in the United Kingdom and worked as a director on behalf of Unitednet, a business based in the United Kingdom.  *See* **Doc. 1, ¶ 120**.  Russell also worked with officers and employees of the Tata Signatories for a four-year period, and these parties are located in the United Kingdom, Bermuda, and the Netherlands.  *Id.* **¶ 35**.  In their response to the order to show cause, Plaintiffs do not specifically address the unjust enrichment or *quantum meruit* claim or argue that special choice of law provisions apply to the unjust enrichment or quantum meruit claim.  Rather, Plaintiffs argue that the Court should look to the *lex loci delicti* rule.   As explained above, that is in the United Kingdom, where the contract was terminated.

The Court finds that foreign law applies to a majority of the parties' dispute.  Moreover, one issue that is not disputed is that the Agreement between the Tata Signatories and Plaintiffs, which are central in part to all of Plaintiffs' claims, contains an English choice-of-law provision.  Plaintiffs suffered their economic injury in the United Kingdom.  As explained above, the last act necessary to complete the injury occurred in the United Kingdom, when the agreement was terminated.   Therefore, foreign law applies to the claims in this dispute.

Assuming without deciding that the Court were required to consider where the injury was felt, the injury or economic harm was felt in the United Kingdom – where both Plaintiffs resided.  *See, e.g. Kennicott v. Sandia Corp.,* 314 F. Supp. 3d 1142 (D.N.M).

Even assuming some claims arose under United Kingdom law and others under New Mexico law, the Court would still find dismissal for *forum non conveniens* appropriate, as the vast

majority of the underlying dispute is subject to English law. *Archangel Diamond Corp. Liquidating Trust v. Lukoil*, 812 F.3d 799, 805-06 (10th Cir. 2016) ("[W]e have not foreclosed consideration of *forum non conveniens* when some of the claims are based on U.S. law and some are based on foreign law.  To do otherwise would allow a party to avoid a *forum non conveniens* dismissal simply by including a claim based upon a domestic statute. Here, the vast majority of the underlying dispute is subject to Russian law, and *forum non conveniens* applies.").  No party has suggested that severing claims would be appropriate here.

> **D.** ***Forum non conveniens* factors weigh in favor of dismissal.**

Even if foreign law applies, however, "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Rivendell Forest Prod., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993). The Court must weigh between the two forums—New Mexico and the United Kingdom.  The private interest factors to be considered are:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Gschwind*, 161 F.3d at 606.

To note, the *forum non conveniens* inquiry is not limited solely to the convenience of the individual parties.  Here, the parties and the witnesses appear to be located all over the world, including the United States, the United Kingdom, and India.  The Tata Signatories, whose officers or employees are likely to be called as witnesses, are located in the United Kingdom, the Netherlands, and Bermuda.  The nature and the number of sources of proof in each location is unspecified.  But on the face of the Complaint, it appears that most of the witnesses in the case are located abroad.  If this dispute were litigated in the United States, the parties and witnesses would

likely be required to travel extensively from the United Kingdom, India, the Netherlands, and Bermuda to New Mexico and incur great expense. However, neither party has presented evidence that any non-party witnesses could not be compelled or would not be willing to attend trial in New Mexico. Still, the Court is not convinced that teleconferencing technology suffices to mitigate the cost of travel and significant inconvenience that appears to favor litigation in the United Kingdom or another foreign forum.

Next, the Court considers the public interest factors. These include:

(1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Gschwind*, 161 F.3d at 606.

Defendant Tata America argues that the public interest factors weigh in its favor, including the need to make factual or legal findings based on foreign law, New Mexican jurors lack of connection to the litigation, and the administrative burden and congestion of New Mexico courts. *See* **Doc. 9, at 13**. The Court agrees.

To add, courts within the District of New Mexico face a heavy criminal and civil docket. Though there is some connection to New Mexico, as this is where Defendant Lucero resides and LGL has its place of business, as pled in the Complaint, there are no allegations that any other Defendant or the matters at issue have any connection to New Mexico. Yet, there are strong ties to the United Kingdom. The Complaint does not raise a local dispute, and without a dispute local to the community of New Mexico, there is little public interest in subjecting the community to the burdens of jury service.

Further, this case will require the application of laws of the United Kingdom or England. Such issues are ones in which the United Kingdom has a strong interest in resolution by its own

courts, and this Court is unfamiliar with the laws of the United Kingdom.  The United Kingdom also has a much more substantial interest in this case, as it concerns injury to citizens of the United Kingdom, involving an English contract and the acquisition of telecommunication equipment between the United Kingdom and the Netherlands.  Plaintiffs are citizens of the United Kingdom, and therefore, their choice of forum is entitled to less deference.  Overall, the dispute has greater ties to the United Kingdom and Europe, and there is a more than *de minimis* interest in having a foreign forum litigate this dispute.  Even assuming some claims arose under New Mexico law, the alleged underlying misconduct is attributable to all defendants, and the Court, exercising its discretion, would dismiss the entire action instead of splitting it into two.

This Court concludes that the scales tip in favor of pursuing this litigation in the United Kingdom.  Though conditions are "not mandatory for a proper *forum non conveniens* dismissal," they are "within the district court's discretion" and the Court finds them appropriate, if not necessary, to protect Plaintiffs' interest here.  *See Yavuz II*, 576 F.3d at 1182.  The Court issued an order to show cause why the Court should not apply the following conditions:

1. Defendants shall agree to submit to and accept the exercise of jurisdiction of the Courts of England and Wales in any subsequent United Kingdom proceeding on these matters.

2. Defendants shall waive any statute of limitations defenses that have arisen since the commencement of this action.

3. The claims against Defendants may be reinstated in the event that jurisdiction in the English courts is declined.

**Doc. 28 at 32**.  Defendants Tata Communications America, Mr. Lucero, and Defendant Latin Group agreed or did not object to these conditions.  *See* **Doc. 32 at 2-3**; **Doc. 39 at 4**.  Defendants Tata Communications India Ltd and Tata Sons Private Ltd. summarily objected to Condition 1, as

they assert the claims against them should be dismissed for lack of personal jurisdiction.  Because they did not object to Condition 2 or 3, the Court assumes they accept them.  They did not state any other grounds why the Court should not apply these conditions.  These conditions are not inappropriate, as these Defendants have *already agreed* that the United Kingdom is an available and adequate forum. *See, e.g.,* **Doc. 40 at 5**; **Doc. 41 at 5**.  These conditions merely state what the parties have already agreed to in this proceeding. If the United Kingdom is not an available forum, these conditions merely ensure that Plaintiffs can reopen or refile their case here in this district where the case left off.  Nevertheless, the Court will not apply Condition 1 to Defendants Tata Sons and Tata Communications (India).  However, if the Courts of England and Wales do not accept the case, Condition 3 will apply, and Plaintiffs may refile their case here.

The Court finds these conditions for the *forum non conveniens* dismissals appropriate and will apply them in this case as explained above.

## II.      Plaintiffs' request for a hearing is denied.

Plaintiffs request that the Court hold a hearing on the motions, because of the complicated legal issues.  Plaintiffs do not suggest that an evidentiary hearing is necessary.  The Court finds that the type of issues in this case are best decided on the briefs, and the record does not suggest that a hearing would be helpful.

## III.      Defendants Tata Sons Private Ltd. and Tata Communications (India) Ltd. motions to dismiss for lack of personal jurisdiction are denied as moot.

Defendants Tata Communications India Ltd and Tata Sons Private Ltd. moved for the Court to dismiss the claims against them for lack of personal jurisdiction.  The Court denies their motions as moot.  The Court may address *forum non conveniens* without addressing a motion to dismiss for personal jurisdiction.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549

U.S. 422, 432, 127 S. Ct. 1184, 1192, 167 L. Ed. 2d 15 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."). This court chooses to do so here, and declines to rule on personal jurisdiction. *Id.* To the extent Defendants Tata Sons and Tata Communications India believe the Court must rule on personal jurisdiction before applying conditions to its *forum non conveniens* dismissal, the Court did not apply the one condition (Condition 1) they rejected. Defendants Tata Sons and Tata Communications accepted, or did not object to, Conditions 2 and 3.

Alternatively, assuming that the Court may not dismiss Defendants Tata Sons and Tata Communications (India) for *forum non conveniens*, the Court would deny their motions to dismiss for lack of personal jurisdiction on the merits.

"The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007), *citing Lolavar v. de Santibanes,* 430 F.3d 221, 229 (4th Cir.2005). "In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed and must allege facts that would support a prima facie showing of a conspiracy." *Id.*

Merely showing conspiracy is insufficient to establish personal jurisdiction. Rather, Due Process requires that Plaintiffs establish "minimum contacts as to each defendant." *Weldon v. Ramstad-Hvass*, 512 Fed. App'x 783, 789 (10th Cir. 2013). "[T]o hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standard applicable to personal jurisdiction and those applicable to liability." *Hart v. Salois*, 605 F. App'x 694, 700 (10th Cir. 2015). A co-conspirator's presence might create minimum contacts

for jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, an injury occurs in the forum, or substantial steps in furtherance of the conspiracy are taken in the forum. *Melea Ltd*., 511 F.3d at 1070.

In New Mexico[3], the elements of a civil conspiracy are, (1) a conspiracy between two or more individuals; (2) specific wrongful acts carried out by the members of the conspiracy; (3) damage to the plaintiff as a result. *Ettenson v. Burke*, 130 N.M. 67, at ¶ 12 (N.M. Ct App. 2001). To show that a conspiracy existed involving Defendants Tata Sons and Tata Communications, Plaintiffs must plausibly allege that they entered into an agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 1978-NMCA-117, at ¶ 5, 92 N.M. 297. The conspirators must enter the agreement with the intent to carry out the unlawful purpose or conduct. Plaintiffs allege that Defendants conspired to tortiously interference with a contract. That tort requires that the defendant acted with either an improper motive or improper means, and that "the improper motive or improper means [was] used in persuading the person to breach the contract." *Martin v. Franklin Capital Corp*., 2008-NMCA-152, ¶ 7, 145 N.M. 179, 195 P.3d 24, 27 (alteration added). The plaintiff does not need to allege that the improper motive was the sole motive for the interference. See *Fikes v. Furst*, 2003-NMSC-033, ¶ 21, 134 N.M. 602, 81 P.3d at 552 ("This Court, though, has never stated that an improper motive must be the sole motive for interfering with an existing contract."). Improper means can be indicated by violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood, but this list is not definitive. *See M & M Rental Tools, Inc. v. Milchem, Inc*., 1980-NMCA-072, ¶ 29, 94 N.M. 449, 612 P.2d 241, 246.

---

[3] The parties state that New Mexico law applies. Therefore, for the purpose of this personal jurisdiction analysis, the Court will assume the same.

Here, Plaintiffs clearly make a prima facie case that Defendants Tata Sons and Tata Communications entered into a conspiratorial agreement with Defendant Lucero for the purpose of wrongfully interfering with the performance of a contract, for all the reasons stated by Plaintiffs. *See* **doc. 43 at 3-6.**  Plaintiffs have put forth detailed allegations regarding the alleged participated of Defendants Tata Sons and Tata Communications (India) in the conspiracy to interfere with the contract.  Defendants appear to dispute whether wrongful intent existed.  Plaintiffs have, at this stage, made a prima facie case for wrongful intent.  Moreover, it is clear that Plaintiffs make a prima facie case that a Defendant Lucero took substantial steps in furtherance of the conspiracy while in New Mexico.  Under the Tenth Circuit's "conspiracy" standard for personal jurisdiction, this appears to be enough to create minimum contacts for the other co-conspirators.  *Melea Ltd.*, 511 F.3d at 1070.

## CONCLUSION

Therefore, this matter is dismissed under *forum non conveniens*, subject to the conditions previously explained.  The Court will enter a separate judgment.

**IT IS THEREFORE ORDERED** as follows:

- The Court concludes that Plaintiffs have not shown cause why the remaining Defendants should not be dismissed for *forum non conveniens*. Therefore, the claims against the remaining Defendants are **DISMISSED** for *forum non conveniens*;

- Plaintiffs' Motion for Hearing (**Doc. 51**) is **DENIED;**

- Plaintiffs' Motion to Reconsider (**Doc. 42**) is **DENIED**;

- Defendant Tata Sons Private Limited's Motion to Dismiss (**Doc. 33**) is **DENIED AS MOOT**; and

- Defendant Tata Communications India Limited's Motion to Dismiss (**Doc. 34**) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' *forum non conveniens* dismissal from this case is subject to the following conditions:

1. Defendants shall agree to submit to and accept the exercise of jurisdiction of the Courts of England and Wales in any subsequent United Kingdom proceeding on these matters.[4]

2. Defendants shall waive any statute of limitations defenses that have arisen since the commencement of this action.

3. The claims against Defendants may be reinstated in the event that jurisdiction in the English courts is declined.

**IT IS SO ORDERED**.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

---

[4] As explained above, Condition 1 does not apply to Defendants Tata Communications (India), Ltd and Tata Sons Private, Ltd.  The remaining Defendants accepted, or did not object to, this condition.